CALLAHAM v. CHILDERS, Dist. Judge.

*99 P. 2d 126.*

No. 29299. Feb. 6, 1940.

H. P. Hosey and Bascom L. Coker, both of Idabel, for petitioner.

Geo. R. Childers, of Antlers, pro se.

DANNER, J. This is an original proceeding wherein petitioner seeks a writ of mandamus requiring the respondent district judge to certify his disqualification in a case pending in respondent's court wherein petitioner's wife is plaintiff and petitioner is defendant. That case involves divorce and the distribution of between thirty and fifty thousand dollars worth of property.

Petitioner first filed his affidavit and application for disqualification, in the district court, as required by law. He charged that the attorney for plaintiff therein was the judge's son, and had been retained by plaintiff on a contingent fee basis, relying in this connection upon the rule announced in State ex rel. Mayo v. Pitchford, 43 Okla. 105, 141 P. 433, that under such circumstances the attorney has an equitable interest in the subject matter and result of the suit, which disqualifies the judge under section 5812, R. L. 1910, now section 2911, O. S. 1931, 22 Okla. St. Ann. § 571, "when he is related to any party to said cause within the fourth degree of consanguinity or affinity." He also charged bias and prejudice of the respondent, existing by reason of certain facts and circumstances not necessary to relate at this time.

When the application came on for hearing, the respondent immediately stated that he refused to disqualify, for the reason that he did not believe he was disqualified. Nevertheless, defendant's counsel sought to introduce evidence to substantiate those portions of the affidavit as to which the court would not presumably have knowledge, such as whether the contract between plaintiff and her attorney was contingent. The court refused, however, to let defendant introduce any evidence whatever.

Thereafter the present mandamus action was filed in this court. The cause was assigned to the Honorable Marion J. Northcutt, referee of this court, for the hearing of evidence, and notice of said hearing was given the parties. On the day of the hearing neither the respondent nor anyone in his behalf appeared. The petitioner and his attorney appeared, and the referee heard the testimony of said petitioner and several of his witnesses.

The evidence submitted before the referee did not relate to the nature of the contract between plaintiff and her attorney, or as to whether the attorney's fee is contingent or otherwise. Plaintiff, however, filed certain affidavits in this court prior to the hearing, denying that it is contingent. No part of our present ruling is based upon or affected by that issue.

The bulk of petitioner's evidence, both by witnesses and affidavits, was directed at establishing bias of the respondent in favor of plaintiff, and prejudice against the defendant. We cannot say that actual bias or prejudice was shown. No word or conduct of the respondent himself was offered in evidence which would tend to cast doubt upon the fairness of any judgment he might render in this case. But forces which no doubt are entirely outside the control of the respondent have put a different complexion upon the matter. The plaintiff herself is partly responsible for that situation, and so is her attorney, according

to our appraisement of the record, and not the petitioner or the respondent. Without narrating the evidence, none of which is directly discreditable to respondent, we may state bluntly that any favorable judgment which he might enter for plaintiff would in all probability be questioned and suspected by many citizens, and reasonably so from their own viewpoint, due to the circumstances of the case and antecedent events, which have been given considerable publicity. If that situation had been produced by petitioner, we would make short work of denying this writ, but such is not the case.

Instances akin to the present one have arisen several times in this jurisdiction. They require the most painstaking consideration, for on the one hand mere rumor or gossip should not be heard to stay the orderly dispatch of justice, while on the other hand it is of even more importance that the judiciary be and remain free from suspicion or doubt in the performance of its functions. It was with the latter thought in mind that this court, in its supervisory capacity, occasionally has granted such writs, even in the absence of proof of actual bias or prejudice.

From the viewpoint of the public at large, and therefore from the practical viewpoint from which respect for the courts is surveyed and shaped, a judge should not preside over any trial, and especially a nonjury trial, when the circumstances are such as would or might tend to excite popular suspicion.

In the instant case, it is a combination of circumstances, rather than any one factor alone, which produces that condition. Let it be said at this point, however, that our holding herein is not based exclusively on the father and son relationship between the judge and plaintiff's attorney. That relationship, standing alone and of itself, is not sufficient, at least in the absence of an equitable interest in the action itself, such as arises in contingent fee cases. See the Pitchford Case, supra, and annotation at 11 A.L.R. 1325.

In its broader aspects we have here the same situation, in principle, as was present in State ex rel. Harden v. Edwards, 176 Okla. 187, 56 P. 2d 402, another divorce case. There we said:

"We deem it unnecessary to try and determine the truthfulness of relator's allegations. * * * We are aware of certain circumstances and conditions that have arisen in the main litigation of such nature that they may cast doubt or suspicion on any judgment the respondent judge might pronounce."

Pointing out that it was the duty of this court to be vigilant in removing and eliminating every possible semblance of doubt or suspicion of the fairness or impartiality of the trial judge, we granted the writ of mandamus, without any finding as to actual bias or prejudice, a condition of mind which is ordinarily not capable of being proven by direct and positive evidence. State v. Parks, 32 Okla. Cr. 61, 239 P. 941.

Another recent decision in which the trial judge was disqualified regardless of the absence of proof of actual prejudice or bias, is State ex rel. Wade v. Crawford, 178 Okla. 230, 62 P. 620. That, too, was a divorce case. The principle adhered to in the instant decision and in the Harden Case, supra, was the basis of the opinion.

In State ex rel. Wilcox et al. v. Bird, 179 Okla. 594, 67 P. 2d 966; the defendant bank was represented by a former law partner of the judge, who had formerly represented the bank as attorney. The judge was disqualified "in order to remove any doubt of possible partiality." The court syllabus in that case is the basis of our ruling herein. It reads:

"When circumstances and conditions surrounding litigation are of such nature that they might cast doubt and question as to impartiality of any judgment the trial judge may pronounce, said judge should certify his disqualification."

The basis of the opinion is expressed in this manner:

"While the district judge in the instant case may be sufficiently disinterested in

the particular litigation to permit him to preside at the trial in a fair and impartial manner, we think that a situation is here presented where upon application of a litigant the judge should certify his disqualification. His former client, represented by his former law partner, is arrayed against these relators. That circumstance within itself may raise legitimate doubt in the mind of the average person of the impartiality of any judgment that may be rendered adversely to relators in the cause in question."

In State ex rel. Warner et al. v. Fullerton, District Judge, 76 Okla. 35, 183 P. 979, we stated that the question was not so much whether the respondent judge felt that he would be able to give the plaintiffs a fair and impartial trial, as whether the circumstances would preclude reasonable men from feeling that a fair and impartial trial could be had under the circumstances. It was pointed out in Ex parte Ellis, 3 Okla. Cr. 220, 105 P. 184, 25 L.R.A. (N. S.) 653, Ann. Cas. 1912A, 863, that in such cases no technical refinement of argument could convince the people that the case was impartially tried. The court said (3 Okla. Cr. 227, 105 P. 187):

"Such a thing might occur, but the general public would not look upon such a trial as an administration of justice without prejudice. * * * It is not an essential requirement that the judge should be as a matter of fact prejudiced."

In State ex rel. Garrett v. Freeman, Judge, 102 Okla. 291, 229 P. 296, we said:

"Judge Freeman asserts, and doubtless feels, that he is wholly without prejudice or bias in the cause, and that there is no reason for his disqualification. It is the duty of this court, under the exercise of its superintending power, not only to secure to every litigant a fair and impartial trial, but also to see to it that it is done, insofar as possible, in such a manner as will beget no suspicion of the fairness and integrity of the judge. * * * It is important, not only that this case be tried by a fair and impartial judge, but also that this court shall see to it that no suspicion attach to the course of judicial proceeding, in order

that it may be made apparent, insofar as possible, to the community that the judicial proceedings are impartial and beyond reproach; this to the end that the confidence in our judicial system may be sustained."

Son v. Linebaugh, 101 Okla. 291, 225 P. 686; Sandlin v. Weston, County Judge, 162 Okla. 107, 19 P. 2d 361, and Hearn et al. v. Miller, District Judge, 168 Okla. 411, 33 P. 2d 506, although involving actual prejudice, all expressed the underlying principle in virtually the same words (168 Okla. 413, 33 P. 2d 507):

"While the respondent insists that he is not unfriendly to the petitioners, and that he can afford a fair and impartial trial, and while we do not doubt his sincerity in this regard, yet the question is not so much whether he feels and insists that he would be able to give a fair and impartial trial, as it is whether his utterances and actions have been such as to preclude reasonable men from feeling that a fair and impartial trial * * * could be had before him."

The composite or collective impression gained by careful consideration of the whole situation prompts us to the conclusion that it would be better for all parties concerned, including the respondent and the judiciary in general, if the writ should be granted.

The writ is granted.

BAYLESS, C. J., and RILEY, CORN, GIBSON, HURST, and DAVISON, JJ., concur. WELCH, V. C. J., and OSBORN, J., absent.